UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:26-cv-01116-MWC-KS                    Date: March 18, 2026

Title:    Davran Ibragimov v. Ernesto Santacruz, Jr. *et al.*

Present:  The Honorable Michelle Williams Court, United States District Judge

|  T. Jackson  |  Not Reported  |
|---|---|
|  Deputy Clerk  |  Court Reporter / Recorder  |

|  Attorneys Present for Plaintiffs:  |  Attorneys Present for Defendants:  |
|---|---|
|  N/A  |  N/A  |

**Proceedings:   (IN CHAMBERS) Order GRANTING *Ex Parte* Application for Temporary Restraining Order (Dkt. [3])**

Before the Court is Petitioner Davran Ibragimov's ("Petitioner") *ex parte* application ("Application") seeking a temporary restraining order ("TRO") mandating Respondents[1] to release him from custody, enjoining Respondents from re-detaining Petitioner, and prohibiting Respondents from transferring Petitioner outside of the District during the pendency of his habeas proceedings.  *See* Dkt. # 3-1 ("*App.*").  Respondents opposed, *see* Dkt. # 9 ("*Opp.*"), and Petitioner replied, *see* Dkt. # 10 ("*Reply*").

The Court issued a standing order on March 11, 2026, enjoining Petitioner's removal from the District pending further orders from the Court and setting a briefing schedule on Petitioner's Application.  *See* Dkt. # 6.

For the reasons set forth below, the Court **GRANTS** the Application.

---

[1] The Application lists Respondents as the Field Office Director for the Los Angeles Field Office for Immigration and Customs Enforcement ("ICE"), the Acting Director of ICE, the Secretary of the Department of Homeland Security ("DHS"), the Attorney General of the United States, and the Warden of the Adelanto ICE Processing Center.  The Court understands those individuals to be Ernesto Santacruz, Jr., Todd M. Lyons, Markwayne Mullin, Pamela Bondi, and Fereti Semaia, respectively.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  5:26-cv-01116-MWC-KS                    Date: March 18, 2026

Title:     Davran Ibragimov v. Ernesto Santacruz, Jr. *et al.*


I.     Background

Petitioner is an asylum-seeker from Kyrgyzstan.  *See App.* 7.  Prior to his detention, Petitioner lived in Irvine, California, where he maintained stable housing while awaiting resolution of his immigration proceedings.  *See id.*  On November 21, 2024, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture.  *See id.*  Petitioner's asylum application remains pending.  *See id.*

Petitioner has no criminal history and has been compliant with all immigration requirements and supervision conditions during his time in the United States.  *See id.* 8. On September 25, 2025, ICE officers arrested Petitioner.  *See id.*  Immigration authorities did not provide any opportunity for Petitioner to contest his detention before a neutral decisionmaker, nor did immigration authorities make an individualized determination as to whether detention was necessary.  *See id.*

Respondents note that Petitioner had a post-deprivation bond hearing scheduled on October 22, 2025, which Petitioner withdrew without prejudice.  *See Opp.* 2.  On January 15, 2026, Petitioner received a post-deprivation bond hearing, where an Immigration Judge found Petitioner to be a flight risk.  *See id.*

II.    Legal Standard

A.     *Ex Parte* Applications

"Circumstances justifying the issuance of an ex parte order are extremely limited." *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)).  "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO."  *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified.  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).  A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:26-cv-01116-MWC-KS                              Date: March 18, 2026

Title:    Davran Ibragimov v. Ernesto Santacruz, Jr. *et al.*

relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *Id.* at 493 (internal quotation marks omitted).

### B.    Temporary Restraining Orders

Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders. Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In general, the showing required for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The applicant for a TRO must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'" *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). Where the non-movant is a government entity, "the third and fourth [*Winter*] factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

## III.    Discussion

### A.    *Ex Parte* Application and *Mission Power* Factors

Petitioner has satisfied the *Mission Power* factors. Petitioner has been in custody since September 25, 2025, despite having no criminal history and a pending asylum application. If the Court heard the Application according to regularly noticed motion procedures, that would leave Petitioner detained without access to the requisite due process for at least an additional 28 days. Though Petitioner could have sought the TRO sooner, the fact that he provided ICE time to give her some additional due process cannot cut against her. However, after months in continued detention without the requisite process, *ex parte* relief is warranted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:26-cv-01116-MWC-KS                                    Date: March 18, 2026

Title:   Davran Ibragimov v. Ernesto Santacruz, Jr. *et al.*

      B.      <u>Likelihood of Success on the Merits</u>

Petitioner has demonstrated a likelihood of success on the merits of his request for release from detention. He argues that immigration authorities deprived him of the procedural protections that the Due Process Clause of the Constitution requires. *See App.* 12. "Given that due process interests are at stake, we look to the test outlined in" *Mathews v. Eldridge*, 242 U.S. 319 (1976). *See Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160 (9th Cir. 2004). There, the Supreme Court discussed the need to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Regarding the first factor, Petitioner has a reliance interest on the "implied promise" that immigration authorities would not revoke his liberty, and that reliance was justifiable given his compliance with all conditions applicable to his release. *Cf. Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025). Petitioner's detention also impedes his ability to maintain gainful employment. Accordingly, Petitioner's private interest in remaining free from detention is significant.

As to the second *Mathews* factor, Petitioner notes that he received no pre-deprivation process of any kind. *See App.* 14. "The absence of pre-deprivation procedures creates a high risk of erroneous liberty deprivation." *Gomez Romero v. Wamsley*, No. C25-2207-JHC-MLP, 2025 WL 3628633, at *1 (W.D. Wash. Dec. 8, 2025). For that reason, the second *Mathews* factor counsels in favor of Petitioner's release.

Still, the Court must consider the government's interests. Though the government has an interest in the steady enforcement of its immigration laws, the government's interest in detaining Petitioner without any procedural protections is slight. *See Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *6 (E.D. Cal. Jan. 5, 2026) (citing

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:26-cv-01116-MWC-KS                                           Date: March 18, 2026

Title:     Davran Ibragimov v. Ernesto Santacruz, Jr. *et al.*

*Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)).  Moreover, custody hearings for immigration detention are routine and impose a "minimal" cost on the government.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).  Thus, the third *Mathews* factor counsels in favor of granting Petitioner's release from detention.

Respondents contest Petitioner's request for release from detention by arguing that he has already received a bond hearing under 8 U.S.C. § 1226(a).  What Respondents fail to address, however, is that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.  *See Lucena-Ojeda v. Noem*, No. 2:26-cv-00085-BAT, 2026 WL 279353, at *2 (W.D. Wash. Feb. 3, 2026) ("The Court also finds while Petitioner may request a bond hearing, a post-deprivation bond hearing is an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty." (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1323–24 (W.D. Wash. 2025))).  Accordingly, Petitioner's entitlement to a post-deprivation bond hearing does not displace his entitlement to pre-deprivation procedural protections.

The Court must heed the language in *Mathews* that "[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing."  *See* 424 U.S. at 331.  Given the severe delay that comes with the receipt of post-deprivation bond hearings, and since the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities," *see Hernandez v. Sessions*, 872 F.3d 976, 995 (2017), a post-deprivation bond hearing cannot undo those harms.  And time in detention causes people to lose jobs that they may not be able to recover.  The argument that a post-deprivation hearing would provide full relief assumes that one can recover everything that comes with being free from detention for several months, a dubious proposition.

For these reasons, Petitioner has shown a likelihood of success on the merits of his request for immediate release from detention.

C.      Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:26-cv-01116-MWC-KS                     Date: March 18, 2026

Title:     Davran Ibragimov v. Ernesto Santacruz, Jr. *et al.*

(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "Moreover, the Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention,' including 'subpar medical and psychiatric care in ICE detention facilities.'"  *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *6 (C.D. Cal. Aug. 28, 2025) (quoting *Hernandez*, 872 F.3d at 999).  Since denying Petitioner's Application would continue to deprive him of liberty without due process and subject him to the subpar conditions of ICE detention, this factor weighs in favor of granting Petitioner's release from detention.

> D.      Balance of Equities and Public Interest

As detailed above, the last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  As to Respondents' interests, there is a compelling interest in the enforcement of the nation's immigration laws.  *See Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018).  Still, the balance of equities and the public interest factors tip in favor of Petitioner because he is challenging Respondents' violation of federal law.  *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citations omitted)); *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030590, at *9 (C.D. Cal. Sept. 12, 2025); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *10 (C.D. Cal. Dec. 11, 2025) ("'Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.'" (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005))); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (noting that the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

Accordingly, and considering the other factors that the Court has already examined, Petitioner is entitled to immediate release from detention.

IV.     Bond Requirement

Rule 65 notes that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  5:26-cv-01116-MWC-KS                                    Date: March 18, 2026

Title:     Davran Ibragimov v. Ernesto Santacruz, Jr. *et al.*


language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original)). "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (cleaned up). "That is, the mandatory language of Rule 65(c) does not 'absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond.'" *Vaskanyan v. Janecka*, No. 5:25-cv-01475-MRA-AS, 2025 WL 2014208, at *8 (C.D. Cal. June 25, 2025) (quoting *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003)).

Since the Court is ordering Respondents to follow the governing law, bond is unnecessary. *See Swan v. Tanjuakio*, No. 21-00052 JMS-KJM, 2021 WL 1794756, at *8 (D. Haw. May 5, 2021) ("The court is simply requiring [defendant] to follow the law. No bond is required." (footnote omitted)); *Hassanzadeh v. Warden*, No. ED CV 25-2113-DMG (MAAx), 2025 WL 3306272, at *6 (C.D. Cal. Nov. 25, 2025) (ruling that bond was unnecessary where the court ordered respondents to release immigration detainee from custody and follow the governing law).

V.     Conclusion

For the foregoing reasons, the Court **GRANTS** the Application and **ORDERS** as follows:

1. Respondents must release Petitioner immediately under the same conditions Petitioner was subject to prior to his September 25, 2025, detention.
2. When releasing Petitioner, Respondents must return any property seized from him in the course of his arrest and detention.
3. Respondents are enjoined from re-detaining Petitioner without providing notice and a pre-deprivation hearing.
4. Respondents are enjoined from transferring Petitioner outside of the Central District of California pending final resolution of his case.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  5:26-cv-01116-MWC-KS                                    Date: March 18, 2026

Title:     Davran Ibragimov v. Ernesto Santacruz, Jr. *et al.*

 

The Court further **ORDERS** Respondents to show cause, in writing, no later than 7 days after this Order as to why a preliminary injunction should not issue.  Petitioner may file a response no later than 7 days after Respondents' filing.

 

**IT IS SO ORDERED.**

|                        | :      |
| ---------------------- | ------ |
| **Initials of Preparer** | TJ   |